IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KARIE L. EVANS, | MEMORANDUM DECISION |
| Plaintiff, | Case No. 2:14-cv-00508-DBP |
| v. | |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | Magistrate Judge Dustin B. Pead |
| Defendant. | |

The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). (Dkt.

12.) Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Acting

Commissioner of Social Security (Commissioner) denying her claims for disability insurance

benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social

Security Act (the Act). (Dkt. 3, 15.) After careful review of the entire record, the parties' briefs,

and arguments presented during oral argument on June 16, 2015, the undersigned concludes that

the Commissioner's decision is supported by substantial evidence and free of harmful legal error

and is, therefore, AFFIRMED.

## BACKGROUND

Plaintiff obtained her GED and has past work experience as a cashier, cook, and server.

(Tr. 188, 203.) Plaintiff claimed in her benefit application that she is disabled due to anxiety,

depression, carpal tunnel syndrome, hepatitis C, and chronic ear infections. (Tr. 187.) Plaintiff

has a history of depression and anxiety predating her alleged onset of disability. (Tr. 294–98,

303–05.) The record also shows that Plaintiff suffered from attention problems and hyperactivity

both before and after her alleged onset date. (*E.g.* Tr. 297, 302, 426.) Plaintiff reports being

diagnosed with hepatitis C in the late 1990s. (Tr. 263.) Plaintiff does not allege any precipitating

event that explains why her disability began on her alleged onset date.

Plaintiff was treated at the Malihen Clinic during 2006 to 2007, and again in 2009. (Tr.

294–98, 303–05, 325.) Clinic records contain evidence of Plaintiff's history of depression,

anxiety, and substance abuse. Plaintiff was hospitalized in December 2007 for chronic liver

disease, "probably secondary to substance intake and shock liver." (Tr. 263.)

In August 2011 Dr. John D. Hardy, Ph.D., conducted Plaintiff's psychological

examination for the purpose of evaluating Plaintiff's disability claim. Dr. Hardy concluded that

Plaintiff suffered from attention deficit hyperactive disorder (ADHD), anxiety, panic with

agoraphobia, and poly-substance abuse (in remission). (Tr. 330.) Dr. Richard Ingebretsen, M.D.,

conducted a physical examination of Plaintiff and found no abnormalities. Specifically, Dr.

Ingebretsen noted that Plaintiff had no symptoms of hepatitis C, no sign of an ear infection, and

tested negative for symptoms of carpal tunnel syndrome. (Tr. 351–53.) Finally, Dr. Helen Kjolby

conducted a review of Plaintiff's medical records and concluded that Plaintiff retained the ability

to perform simply work. (Tr. 394.)

## STANDARD OF REVIEW

When the Court hears an appeal of a Social Security determination, the Court examines

whether the ALJ's factual findings are supported by substantial evidence and whether the ALJ

applied the correct legal standards in determining disability. *Winfrey v. Chater*, 92 F.3d 1017,

1019 (10th Cir. 1996). Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). The Court may consider the specific rules of law that the ALJ

must follow in "'"weighing particular types of evidence,' but will not reweigh the evidence or

substitute [its] judgment for the Commissioner's.'" *Joyce v. Barnhart*, 2004 WL 214478 (10th

Cir. 2004). Moreover, the Court will not "displace the agency's choice between two fairly

conflicting views, even though the [C]ourt would justifiably have made a different choice had the

matter been before it de novo."  *Lax v. Astrue* 489 F.3d 1080, 1084 (10th Cir. 2007).

## I.      Five step sequential evaluation

The Social Security Administration follows a five step sequential evaluation to determine

whether a claimant is disabled. The five steps are summarized in Social Security Ruling (SSR)

00-4p as follows:

> To determine whether an individual applying for disability benefits (except for a
> child applying for Supplement Security Income) is disabled, we follow a 5-step
> sequential evaluation process as follows:

>> 1. Is the individual engaging in substantial gainful activity? If the
>> individual is working and the work is substantial gainful activity, we find
>> that he or she is not disabled.

>> 2. Does the individual have an impairment or combination of impairments
>> that is severe? If the individual does not have an impairment or
>> combination of impairments that is severe, we will find that he or she is
>> not disabled. If the individual has an impairment or combination of
>> impairments that is severe, we proceed to step 3 of the sequence.

>> 3. Does the individual's impairment(s) meet or equal the severity of an
>> impairment listed in appendix 1 of subpart P of part 404 of our
>> regulations? If so, we find that he or she is disabled. If not, we proceed to
>> step 4 of the sequence.

>> 4. Does the individual's impairment(s) prevent him or her from doing his
>> or her past relevant work (PRW), considering his or her residual functional
>> capacity (RFC)? If not, we find that he or she is not disabled. If so, we
>> proceed to step 5 of the sequence.

5. Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her RFC together with the 'vocational factors' of age, education, and work experience? If so we find that the individual is disabled.  If not, we find that he or she is not disabled.

Here, the ALJ found that Plaintiff was not engaged in substantial gainful activity. (Tr. 20.) The ALJ also found that Plaintiff suffered from severe impairments: (1) affective mood disorders and organic mental disorders, including attention deficit hyperactivity disorder, anxiety disorder and panic disorder with agoraphobia; and (2) polysubstance dependence. (Tr. 12.) The ALJ determined that none of these impairments met or exceeded any of the listed impairments. (Tr. 13–15.) The ALJ determined that Plaintiff could not perform her past relevant work, but that she could make a vocational adjustment to other jobs that exist in significant numbers in the national economy (touch-up screener, final assembler, small products assembler, or inspector and hand packager). (Tr. 20–22.)

## ANALYSIS

### I.      The ALJ reasonably discounted Plaintiff's subjective complaints.

"Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). *Kepler* provides examples of factors an ALJ may consider:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler* at 391. Here, the ALJ provided several reasons, supported by substantial evidence, for

finding Plaintiff not fully credible. *See* SSR 96-7p, 1996 WL 374186, at *2.

First, the ALJ appropriately determined that Plaintiff's testimony was inconsistent with

her daily activities. *See* 20 C.F.R. § 404.1529(c)(3)(i) (noting that an ALJ must consider a

claimant's activities); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ reasonably

found a claimant's description of her daily activities did not indicate significant limitations,

where the claimant could care for herself, her home, and her children, and also drive, shop,

handle finances, garden, visit friends, and go out to eat). For instance, Plaintiff reported that she

was able to care for her own personal needs, care for her young grandson and her pets, prepare

meals by following recipes, perform household chores and yard work, manage her own finances,

use public transportation, shop for groceries, take long walks, and socialize with friends. (Tr. 18;

*see* Tr. 196-200, 330, 352, 383.) The ALJ reasonably determined that Plaintiff's activities were

inconsistent with the severity of her complaints. (Tr. 18.)

Next, the ALJ found that the weight of the medical evidence demonstrated that Plaintiff's

mental impairments were not as severe as she alleged. (Tr. 21-24); *see also* 20 C.F.R.

§ 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical

evidence"); *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (noting the "lack of

objective medical evidence" in upholding the ALJ's credibility finding). As the ALJ noted, the

record also showed that Plaintiff's symptoms were well-controlled when she was compliant with

her medication regimen. (*See, e.g.*¸Tr. 382 (Plaintiff was "better on Zyprexa"); Tr. 404 (Plaintiff

compliant with medications and she had a positive outlook and was described as stable); Tr. 408

(Plaintiff reported improved sleep and mood with medication); Tr. 411 (Plaintiff taking Seroquel,

which was allowing her to sleep and helping her symptoms); Tr. 424 (Plaintiff compliant with

medication and "doing well"); Tr. 428 (Plaintiff reported improved mood after she started taking

medication).) Conversely, the record also demonstrated that Plaintiff was occasionally

non-compliant with her medication regimen, which often exacerbated her symptoms. (*See, e.g.*,

Tr. 378 (Plaintiff reported increased depression after she stopped taking her medications); Tr.

408 (Plaintiff reported agitation after she ran out of medication three weeks earlier); Tr. 420

(Plaintiff was "markedly" physically agitated but had forgotten to take her medication for three

weeks).) In addition, the ALJ also observed that there were long gaps of time in Plaintiff's

treatment history, as she did not receive any mental health treatment between April 2010 and

January 2011, and she did not submit any treatment records after June 2012. (Tr. 18–19.) Further,

no treating physician opined that Plaintiff was wholly unable to work or had greater limitations

than set forth in the ALJ's residual functional capacity assessment. (Tr. 19.) Therefore, based on

all of the above, the ALJ reasonably concluded that the objective medical evidence suggested that

Plaintiff had greater functioning than she admitted. *See* 20 C.F.R. § 404.1529 (c)(4) (an ALJ

must consider whether there are conflicts between a claimant's statements and the signs and

laboratory findings); *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (fact that impairment

was well-controlled supported ALJ's conclusion the claimant was not disabled); *Huston v.*

*Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (in assessing credibility, an ALJ may consider "the

consistency or compatibility of nonmedical testimony with objective medical evidence"); *Barnett*

*v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (noting a claimant was not treated by her physicians

in the nine months preceding the administrative hearing). Therefore, the Court finds that the ALJ

provided several well-supported and valid reasons for finding Plaintiff's allegations of

completely disabling mental limitations not credible.

**II.     The ALJ reasonably evaluated the medical source opinions.**

The ALJ properly weighed the medical source opinions. *See* 20 C.F.R. § 404.1527

(setting forth procedure for weighing medical opinion evidence). Reviewing psychologist Dr.

Lawrence opined that Plaintiff would be able to understand, recall, and carry out simple

instructions; adhere to a schedule and persist on routine tasks without need for special

supervision; and could interact effectively with co-workers and the public. (Tr. 349.) Dr. Kjolby

later reviewed the record and agreed that Plaintiff retained the ability to perform simple work.

(Tr. 394.) The Court finds that these opinions provided substantial evidence in support of the

ALJ's residual functional capacity assessment because the opinions were consistent with the

record as a whole. (*See* Tr. 20); 20 C.F.R. § 404.1527 (e)(2)(i) (State agency medical consultants

"are highly qualified physicians, psychologists, and other medical specialists who are also

experts in Social Security disability evaluation"); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th

Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ

is entitled to consider).

The ALJ also reasonably evaluated examining physician Dr. Hardy's opinion and

concluded that it was both inconsistent with the doctor's own treatment notes and with the record

as a whole. (Tr. 21.) First, the ALJ noted that Dr. Hardy's opinions related to the "unique

presentation of claimant . . . ." (Tr. 20.) In August 2010, after a one-time examination, Dr. Hardy

diagnosed Plaintiff with ADHD; anxiety disorder not otherwise specified (NOS); panic with

agoraphobia; and a history of poly-substance dependence (in two year remission). (Tr. 330.) He

opined that Plaintiff's hyperactivity would present more of a challenge than her anxiety and concluded that she would have "significant challenges staying focused on any particular activity for the expected period of time necessary in a job." (Tr. 331.) As discussed in *Flaherty*, the ALJ may properly consider the abbreviated nature of a claimants relationship with an examining physician. 515 F.3d at 1070.

Additionally, the ALJ noted that Dr. Hardy relied on Plaintiff's report of racing thoughts; however, Plaintiff infrequently reported such symptoms to her treatment providers. (Tr. 20; *see, e.g.*, Tr. 382, 404, 408, 424, 428.) Further, Dr. Hardy stated that Plaintiff's substance abuse was in remission, but the evidence showed that Plaintiff continued to use marijuana throughout much of the relevant period. (Tr. 20; *see, e.g.*, Tr. 263, 378, 415, 422, 424, 428.) Indeed, in October 2011, Plaintiff tested positive for marijuana and her care provider discussed the possibility that "pot" might be causing her agitation and that Plaintiff should consider reducing her usage. (Tr. 415.) Finally, Dr. Hardy also opined that Plaintiff would have "significant challenges" staying focused due to her "tremendous amount of energy and hyperactivity," but as the ALJ pointed out, the record as a whole did not demonstrate that excess energy was a constant issue for Plaintiff. (Tr. 20; *see, e.g.*, Tr. 378 (Plaintiff reports depression but no hyperactivity); Tr. 381 (Plaintiff does not report excess energy); Tr. 382 (Plaintiff reports "no energy")).) Again, under *Flaherty* and the applicable regulations, the Court finds that the ALJ reasonably gave less weight to Dr. Hardy's opinion based upon the available supporting evidence, and consistency (or lack thereof) with the remainder of the record. *See* 20 C.F.R. § 404.1527(c)(4) (stating that ALJ must consider consistency); *Raymond v. Astrue,* 621 F.3d 1269, 1272 (10th Cir. 2009) (finding ALJ reasonably discounted treating physician opinion that was inconsistent with other medical evidence).

In sum, substantial evidence exists to support the ALJ's determination that Plaintiff's depression and anxiety were controlled when she was compliant with her medications and that she remained capable of a wide range of daily activities. Further, the ALJ gave Plaintiff the benefit of the doubt, restricting her to a significantly reduced range of unskilled light work. The Court finds that the ALJ reasonably considered the evidence and the medical source opinions in finding Plaintiff's complaints of disabling limitations less than fully credible, and limiting her to light work with significant physical and mental restrictions.

III.     **The ALJ reasonably found that Plaintiff could perform work that exists in significant numbers in the national economy.**

The ALJ specifically asked the vocational expert to identify sedentary and light unskilled jobs that a hypothetical individual with the same residual functional capacity as Plaintiff could perform. (Tr. 77; *see also* Tr. 258.) She testified that such an individual could perform the unskilled jobs of small products assembler (120,000 jobs in the national economy), inspector and hand packager (50,000 jobs in the national economy), touch-up screener (60,000 jobs in the national economy), and final assembler (60,000 jobs in the national economy). (Tr. 77–78.) The expert stated that, given the hypothetical, these jobs would be reduced by fifty percent to account for all of the limitations assessed by the ALJ. (Tr. 79.) She stated that this reduction was based on her experience and her study of the jobs. (Tr. 85); *see* SSR 00-4p, 2000 WL 1898704, at *2 (noting that vocational expert testimony can include information not listed in the DOT).

Thus, even after reducing the number of jobs available due to all of the assessed limitations, the expert concluded that there were 60,000 small products assembler jobs, 25,000 inspector and hand packager jobs, 30,000 touch-up screener jobs, and 30,000 final assembler jobs available in the national economy. (Tr. 77–78.) As such, the Court finds that the Commissioner

has met her burden at step five to show that there were jobs existing in significant numbers that

Plaintiff could perform. *See* 20 C.F.R. § 416.966(a) (work exists in the national economy "when

it exists in significant numbers either in the region where you live or in several other regions of

the country"); *Raymond v. Astrue,* 621 F.3d 1269, 1274 (10th Cir. 2009) ("the controlling statutes,

federal regulations, and case law all indicate that the proper focus generally must be on jobs in the

national, not regional, economy"); *Rogers v. Astrue,* 312 F. App'x 138, 142 (10th Cir. 2009)

(unpublished) (11,000 jobs in the national economy provided substantial evidence to support a

determination of nondisability). Further, the ALJ was entitled to rely on the expert's testimony,

which provided substantial evidence to support the ALJ's finding at step five. *Ellison v. Sullivan,*

929 F.2d 534, 537 (10th Cir. 1990) (recognizing a vocational expert's testimony as substantial

evidence supporting the ALJ's conclusion a claimant was not disabled).

Plaintiff argues that the ALJ did not properly account for her poor concentration found by

Dr. Hardy, and her anxiety in public places that the ALJ personally observed during the hearing.

Plaintiff's argument is unpersuasive. First, the case on which Plaintiff relies does not support her

proposition. Plaintiff cites *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991), to support

her claim that the hypothetical was incomplete. In *Hargis*, the ALJ found at steps two and three

that the claimant suffered from depression (that did not meet or equal a listed impairment), but

the ALJ failed to relate the depression or any associated symptoms to the vocational expert at

step five. *Id.* at 1487, 1493. Here, Plaintiff has not identified any disability or limitation that the

ALJ found in step two that was not presented to the vocational expert.

Moreover, although these limitations were not part and parcel of the disabilities found by

the ALJ, the vocational hypothetical expressly included limitations of: "low concentration level"

and "no working with the general public." (Tr. 258.) Thus, the very limitations Plaintiff proposes

("poor concentration" and "anxiety in public places") apparently were presented to the vocational

expert. Based on the foregoing, the ALJ's findings related to Dr. Hardy's opinion are supported

by substantial evidence. The Court will not reweigh this evidence.

## ORDER

Based upon the foregoing, the ALJ's decision is supported by substantial evidence and is

free of harmful legal error. Accordingly, that decision is AFFIRMED. Judgment shall be entered

in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in

*Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 6th day of July, 2015.

_____
Dustin B. Pead
United States Magistrate Judge